1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE A. EDWARDS,

          Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

          Defendant.

CASE NO.    C05-5002RBL

REPORT AND
RECOMMENDATION

Noted for February 3, 2006

Plaintiff, Michelle Edwards, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-six years old.[1] Tr. 24. She has a high school degree and has completed one year of college. Tr. 24. She has past work experience as a motel housekeeper and janitor. Tr. 38, 94.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

On April 19, 2002, plaintiff protectively filed an application for SSI benefits, alleging disability as of April 1, 2002, due to severe fatigue, neuropathy, nausea, and pain resulting from acquired immune deficiency syndrome (AIDS).  Tr. 72, 81.  Her application was denied initially and on reconsideration.  Tr. 49-52, 54-56.  Plaintiff requested a hearing, which was held on April 13, 2004, before an administrative law judge ("ALJ").  Tr. 57.  Plaintiff, represented by counsel, appeared and testified at the hearing.  Tr. 22-46.

On August 4, 2004, the ALJ issued a decision finding plaintiff not disabled.  Tr. 9-18.  Specifically, the ALJ found in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff's HIV and side effects from her medications are considered "severe" under the Regulations in 20 CFR § 416.920(b);

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and the plaintiff's allegations regarding her limitations are not totally credible;

(4) at step four, plaintiff had the residual functional capacity to perform simple, repetitive light work, not requiring interaction with the general public, and plaintiff was unable to perform her past relevant work; and

(5) at step five, although plaintiff's limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

Tr. 17-18.  Plaintiff's request for review was denied by the Appeals Council on October 29, 2004, making the ALJ's decision the Commissioner's final decision.  Tr. 4-6; 20 C.F.R. § 416.1481.

On January 3, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision.  Dkt. 1.  In her opening brief (Dkt. 11), plaintiff argues that the ALJ's decision should be reversed and remanded to the Commissioner for an award of SSI benefits, or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in not properly evaluating the opinion of plaintiff's mental health provider, and erred in not properly evaluating the disability opinions of plaintiff's treating physician;

(b) the ALJ erred in not properly interpreting the opinions of a reviewing DDS psychologist and the testimony of the vocational expert; and

(c) the ALJ erred in finding plaintiff not credible.

In its response to plaintiff's opening brief, defendant contends that the record contains substantial evidence from which the ALJ, and hence the Commissioner, properly concluded that plaintiff was not disabled within the meaning of Title XVI of the Social Security Act.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Carr v. Sullivan*, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ Improperly Evaluated the Opinions of Dr. Price, the Plaintiff's Mental Health Provider

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *Lester*, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Magallanes*, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31.  A nonexamining physician's

1    opinion may constitute substantial evidence if "it is consistent with other independent evidence in the

2    record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

3        Plaintiff argues that the ALJ erred in not properly evaluating, or taking into consideration, the

4    opinion of Richard Price, MD, an examining psychiatrist, regarding her mental limitations and level of

5    functioning.  The undersigned agrees that the ALJ erred in this regard.  With respect to Dr. Price's opinion,

6    the ALJ found as follows: "Dr. Price assigned the claimant a global assessment of functioning (GAF) equal

7    to 50, and opined that she was capable of performing simple, routine, repetitive work."  Tr. 15.  However,

8    the ALJ failed to include other significant portions of Dr. Price's report.  Specifically, Dr. Price's opinion

9    states in part:

10       The claimant has had active AIDS for some time, which she acquired from her ex-husband.  She has
         four children, two of whom have AIDS.  She reports that she is tired all of the time and she has
11       trouble concentrating and remembering.  She states that she often does not want to get out of bed.
         She is also afraid of dying and she lies awake at night worrying about whether she will see her
12       children graduate from school.  She denies being suicidal.  She acknowledges that she is very tired.
         She finds household chores exhausting and she has to have help with them.

13       The claimant reports that some times are better than others.  Her appetite is not good and she has
14       lost 20 pounds.  Her sleep is interrupted, especially by lying awake and worrying.  She reports that
         her illness has been stabilized with medications but she continues to worry about her future and her
15       life.  She has trouble focusing and remembering and she reports that the medications cause nausea.

16       The claimant indicates that she gets up around 10 AM and goes to bed around 8 PM.  She does not
         visit with friends and does not do the household chores because it is too exhausting.  She has other
17       people run her errands and her roommate does the cooking and most of the household chores.  She
         has a boyfriend but they do not socialize outside of the house.  She states "we stay mostly at home.
18       I'm not in the mood to go anywhere.  We don't belong to any groups."

19       The claimant is capable of managing her funds.  She has the ability to perform simple and repetitive
         tasks.  She would probably have trouble remembering instructions from supervisors.  *Her*
20       *depression alone might make performing work activities on a consistent basis problematic.  She*
         *would probably be unable to perform a normal workday or workweek due to her depression.*  It
21       should be noted that her primary problem is physical rather than mental.

22   Tr. 172-74 (emphasis added).

23       The only specialist to examine plaintiff for mental impairment was Dr. Price, and his opinion is

24   uncontroverted.  While the ALJ did include a small portion of Dr. Price's opinion, indicating that plaintiff

25   was capable of performing simple, routine, repetitive work, the ALJ completely failed to adequately discuss

26   the more significant portions of Dr. Price's opinion.  The ALJ appears to have rejected or ignored the

27   majority of Dr. Price's opinion, which constitutes significant probative evidence.  The ALJ offers no

28   explanation why the rest of Dr. Price's opinion was omitted or rejected, and provides no further analysis of

1   plaintiff's mental condition whatsoever.

2         Further, the ALJ's one-sentence reference to Dr. Price's opinion appears to have been taken out of

3   context, and does not accurately represent Dr. Price's findings.  When read in its entirety, Dr. Price's

4   opinion indicates, among other things, that plaintiff finds household chores exhausting and requires

5   assistance, has trouble focusing and remembering, and is probably unable to perform a normal workday or

6   workweek due to her depression.  Dr. Price's opinion is not inconclusive or ambiguous, and the ALJ erred

7   in omitting or rejecting this opinion without a clear and convincing reason.  *See Lester*, 81 F.3d at 830;

8   *Cotter*, 642 F.2d at 706-07; *Garfield*, 732 F.2d at 610.

9         The omission of Dr. Price's opinion, without explanation, is particularly important in light of the

10   ALJ's rationale for rejecting plaintiff's claims of severe fatigue, neuropathy, nausea, and pain resulting from

11   AIDS due to a lack of objective medical findings or corroborating evidence.  The ALJ's decision states as

12   follows:

13           Although it is clear that the claimant does have an underlying medical condition which could
    reasonably result in the symptoms she alleges if she attempted to exceed her residual functional

14           capacity as set forth below, the claimant's allegations as to the intensity, persistence and limiting
    effects of her symptoms are disproportionate and not supported by the objective medical findings

15           *nor any other corroborating evidence.*

16   Tr. 14 (emphasis added).  The ALJ's ultimate determination that plaintiff's claims are not supported by

17   objective medical findings does not appear to have been based on Dr. Price's opinion, which was omitted

18   without discussion, but rather on the opinions of the reviewing physician.  Dr. Price's opinion, when applied

19   to plaintiff's case, suggests that plaintiff suffers from significant depression, experiences exhaustion when

20   performing simple household functions, and requires assistance with such tasks.

21         In sum, the ALJ erred in not considering the entirety of Dr. Price's opinion, and/or in not providing

22   clear and convincing reasons for rejecting Dr. Price's opinion.  On remand, the ALJ shall consider the

23   opinion of Dr. Price at step two of the analysis and specifically determine whether or not the plaintiff's

24   depression is "severe."  The ALJ shall also address Dr. Price's opinions related to depression at steps four

25   and five.

26   II.     <u>The ALJ Properly Evaluated the Disability Opinions of Plaintiff's Treating Physician</u>

27         The ALJ is responsible for resolving ambiguities and conflicts in the medical evidence.  *Reddick v.*

28   *Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive,

1   "resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

2   Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of*

3   *the Social Security Administration*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether

4   inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether

5   certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.*

6   at 603.

7        In resolving conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent

8   reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary

9   of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

10  The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642.

11  Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*

12  *v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

13       The ALJ found that the medical testimony of Randy Taplitz, MD, plaintiff's treating physician, could

14  not be given controlling weight under Social Security Ruling 96-2p, because it is not well supported by

15  medically acceptable clinical and/or diagnostic studies, and because it is inconsistent with other substantial

16  evidence in the case record. Specifically, the ALJ found that the disability opinions of Dr. Taplitz, as

17  contained in his two written letters, were not supported by the notes in his medical records. The ALJ did

18  not err in this finding.

19       Dr. Taplitz has been plaintiff's treating physician for a considerable period of time, and wrote two

20  disability opinions in the form of letters on her behalf. Tr. 193-94. In the first letter, dated April 1, 2002,

21  Dr. Taplitz stated that "I feel that at this time, it would be nearly impossible for her [plaintiff] to work and

22  additionally take care of her own health as well as that of her children." Tr. 194. The physical evaluation

23  form submitted with this opinion stated that plaintiff has AIDS, severe thrush and vaginal yeast infections,

24  borderline pancytophenia, and fatigue. Tr. 195. In the second letter, dated October 29, 2002, Dr. Taplitz

25  stated that as a result of medications, plaintiff has some side effects which include nausea, neuropathy, and

26  some difficulty focusing. Dr. Taplitz wrote, "I truly believe that she should not be working, both because of

27  her own medical problems, but also due to the critical role she plays in the care of her affected children,

28  who are not infrequently ill." Tr. 193. However, a careful review of Dr. Taplitz's medical records, which

REPORT AND RECOMMENDATION
Page - 6

document his interviews and examinations of plaintiff, shows no mention of fatigue whatsoever.  Further, the medical records clearly indicate that plaintiff always denied having nausea during these examinations, and specifically denied neuropathy as well.

The ALJ properly rejected Dr. Taplitz's opinion letters because they were not supported by the notes in his medical records.  Dr. Taplitz alleged that plaintiff had fatigue when there is no mention of fatigue whatsoever in his notes.  He also said that plaintiff had nausea and neuropathy, when his medical records clearly show the opposite.  At the hearing, plaintiff testified that she suffered from nausea.  However, when she saw Dr. Taplitz following the hearing, she once again denied experiencing nausea.  She also specifically denied neuropathy as noted in Dr. Taplitz's notes.  These are clear inconsistencies that support the ALJ's determination.  Moreover, Dr. Taplitz's letters said that the plaintiff "should" not work–not "could" not work.  Reading his two letters together suggests that Dr. Taplitz believes there are too many issues in plaintiff's life, and she therefore should not add work to her daily activities.  This is different from saying that the plaintiff is disabled for social security purposes.  Further, if Dr. Taplitz's letters contain any ambiguities or inconsistencies, it is up to the ALJ to resolve them.  *Reddick*, 157 F.3d at 722.  The ALJ properly analyzed these inconsistencies, and properly concluded that Dr. Taplitz's letters should be rejected.

III.    The ALJ did not Err in Rejecting the Plaintiff's Definition of "Moderately Limited"

Plaintiff argues that the opinion of Dr. Peterson, a reviewing DDS psychologist, was not properly considered because the ALJ did not accept her statements that plaintiff was moderately limited in seven areas.  Dr. Peterson completed the Mental Residual Functional Capacity Assessment, which involved recording summary conclusions derived from the evidence in plaintiff's file.  Tr. 175-92.  Dr. Peterson found that plaintiff was moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) interact appropriately with the general public, and (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Tr. 175-76.

Plaintiff alleges that a moderate limitation means that an individual is limited in performing the activity up to one-third of the time. Tr. 42. Mr. Jesky, the vocational expert, testified that moderate limitations in the seven categories would indicate the likelihood of problems in maintaining competitive employment, providing this definition of moderate is used. Tr. 42-43. The Program Operations Manual Systems explains, however, how to interpret the check-box form completed by Dr. Peterson. It states that the box for "moderately limited" should be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS-DI 24510.062(B)(2). The same instruction also states that the "degree and extent of the capacity of limitation must be described in narrative format in Section III" of the form. *Id.*

Here, Dr. Peterson explained that these moderate limitations meant, among other things, that plaintiff could follow simple one and two-step instructions; that her symptoms would intermittently interrupt her concentration, persistence, or pace; that she could work with supervisors and a few co-workers but should avoid working with the general public; that she would be able to adapt to changes in the workplace; and that her mental-health evaluation stated that she would probably be unable to perform a normal workday or workweek due to depression. Tr. 177.

Plaintiff's definition of moderate limitation as being limited one-third of the time is therefore without merit. The check-box labeled "moderately limited" requires an explanation in Section III of the form, and therefore should not be interpreted as one-third of the time unless so noted by the reviewing psychologist. Accordingly, the ALJ did not err in rejecting the plaintiff's definition of "moderately limited."

IV.     The ALJ Erred in Finding Plaintiff Not Credible

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, however, the ALJ must provide "specific, cogent

1   reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

2   testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834;

3   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

4   malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

5   *Lester*, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. *O'Donnell v.*

6   *Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).  If there is no evidence of malingering, and a claimant

7   produces objective medical evidence of an underlying impairment which could reasonably be expected to

8   produce some degree of pain and other symptoms, the ALJ may reject the claimant's testimony about the

9   severity of the alleged pain or other symptoms "by offering specific, clear and convincing reasons for doing

10  so." *Smolen*, 80 F.3d at 1281-82 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).

11          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

12  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

13  testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284.  The ALJ also may consider a

14  claimant's work record and observations of physicians and other third parties regarding the nature, onset,

15  duration, and frequency of symptoms. *Id.*

16          The ALJ discounted plaintiff's credibility in part due to "relatively weak medical evidence,"

17  inconsistencies between plaintiff's testimony and the medical records, and plaintiff's ability to be the primary

18  caregiver for four children.  Tr. 14.  Specifically, the ALJ stated in part:

19          Although it is clear that the claimant does have an underlying medical condition which could
            reasonably result in the symptoms she alleges if she attempted to exceed her residual functional
20          capacity as set forth below, the claimant's allegations as to the intensity, persistence and limiting
            effects of her symptoms are ***disproportionate and not supported by the objective medical findings***
21          ***nor any other corroborating evidence.***  Furthermore, although the claimant has described daily
            activities that are fairly limited, two factors weigh against considering these allegations to be strong
22          evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be
            objectively verified with any reasonable degree of certainty.  Secondly, even if the claimant's daily
23          activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the
            claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical
24          evidence and other factors discussed in this decision.  ***Indeed, the record shows that she is the***
            ***primary caregiver for her four children, which suggests that she is physically and mentally able***
25          ***to perform basic work activities.*** ... Thus, considering the entire case record, the undersigned
            cannot find her allegations concerning her inability to work to be sufficiently credible to serve as
26          additive evidence to support a finding of disability.

27  Tr. 14 (emphasis added).  Because the ALJ does not accuse plaintiff of malingering, and because the record

28  does not support such a proposition, the ALJ's reasons for rejecting plaintiff's testimony must be clear and

convincing. A determination by the ALJ that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1998).

The first issue in this analysis is whether plaintiff has an underlying medical condition which could reasonably result in the symptoms she alleges. Here, plaintiff has definitively shown her underlying condition though her medical records and testimony. The ALJ seems to add another caveat to this condition, however, when he discusses whether plaintiff "attempted to exceed her residual functional capacity as set forth below." The ALJ seems to be saying that, so long as plaintiff stays within the RFC, she will not have symptoms. This is not the guide.

A second problem is that the ALJ did not properly consider Dr. Price's opinion, which appears to provide corroborating evidence regarding fatigue. Dr. Price's opinion could add significant support to plaintiff's testimony regarding her degree of limitation. Further, it is not an adequate reason to reject someone's credibility on the grounds that the limitations "cannot be objectively verified with any reasonable degree of certainty."

Moreover, a careful review of Dr. Taplitz's opinions and treatment notes versus plaintiff's testimony before the ALJ shows that any inconsistencies are not substantial, and primarily involve a difference in the length of time that plaintiff reported suffering from certain symptoms. Tr. 22-46, 150-51, 157-60, 203-04, 206-07, 223-24. Given that plaintiff's reported symptoms include memory loss and problems focusing (Tr. 28), these minor differences in timing are plausible, and do not meet the requisite standard of specific, cogent reasons for disbelieving plaintiff's testimony.

The ALJ also discounted plaintiff's credibility in part due to the fact that she is the primary caregiver for her four children, which suggests that she is physically and mentally able to perform basic work activities. To determine if a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. *Smolen*, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Id.* at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." *Id.*

The ALJ's proposition that plaintiff, a single mother, is the primary caregiver for her four children,

REPORT AND RECOMMENDATION
Page - 10

1  and therefore physically and mentally able to perform basic work activities, is a wholly illogical argument.

2  The ALJ relies in part on this argument for finding that plaintiff is fit to participate in a competitive work

3  environment on a daily and weekly basis.  There is no evidence in the record, however, that directly

4  indicates how plaintiff cares for her children, nor how much assistance she requires from her family and

5  friends in this regard.  Dr. Price's opinion does state that plaintiff "does not do household chores because it

6  is too exhausting," and, "she has other people run her errands and her roommate does the cooking and most

7  of the household chores."  Tr. 173.  Indeed, the only significant reference to plaintiff's children appears in

8  Dr. Taplitz's clinical notes, which states that plaintiff said on one occasion that she did a lot of "running

9  after her kids."  Tr. 203.  Such a statement is ambiguous at best, especially when the context of the

10  conversation is unclear, and can be interpreted as plaintiff's expression of concern with her ability to keep

11  up with her children due to her condition.  The ALJ's attempt to logic plaintiff's role as a mother into

12  evidence that she does not suffer exhaustion, and can therefore perform a full workday and workweek, is

13  therefore without merit.

14  V.      This Matter Should Be Remanded for Further Administrative Proceedings

15         The remaining question then is to determine the appropriate remedy for the ALJ's errors, that is, to

16  remand this matter for further administrative proceedings or for an outright award of benefits.  The court

17  may remand this case "either for additional evidence and findings or to award benefits."  *Smolen*, 80 F.3d at

18  1292.  Generally, when the court reverses an ALJ's decision, "the proper course, except in rare

19  circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*,

20  379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from

21  the record that the claimant is unable to perform gainful employment in the national economy," that

22  "remand for an immediate award of benefits is appropriate." *Id.*

23         Benefits may be awarded where "the record has been fully developed" and "further administrative

24  proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d

25  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

26         (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
           evidence, (2) there are no outstanding issues that must be resolved before a
27         determination of disability can be made, and (3) it is clear from the record that the ALJ
           would be required to find the claimant disabled were such evidence credited.

28  *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

REPORT AND RECOMMENDATION
Page - 11

1    Here, the undersigned has found the ALJ erred in evaluating the medical evidence in the record

2 regarding plaintiff's mental impairments and limitations due to depression, and erred in discounting

3 plaintiff's credibility.  Because issues still remain with respect to these two matters, this case should be

4 remanded to the Commissioner for further administrative proceedings.

5                                    CONCLUSION

6    Based on the foregoing discussion, the court should find that the ALJ improperly determined

7 plaintiff was not disabled.  Accordingly, the ALJ's decision should be reversed, and this matter should be

8 remanded to the Commissioner for further administrative proceedings in accordance with the findings

9 contained herein.

10    Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

11 the parties shall have ten (10) days from service of this Report and Recommendation to file written

12 objections thereto. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

13 objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit

14 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 3,**

15 **2006**, as noted in the caption.

16    DATED this 24th day of January, 2006.

17

18

19

20                                    Karen L. Strombom
                                     United States Magistrate Judge
21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 12